**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| DAVID COTTRELL, | : | Case No. 3:20-cv-00098 |
| Plaintiff, | : | District Judge Michael J. Newman |
| | : | Magistrate Judge Sharon L. Ovington |
| vs. | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I. INTRODUCTION

Plaintiff David Cottrell filed an application for Disability Insurance Benefits in July 2016. The claim was denied initially and upon reconsideration. After a hearing at Plaintiff's request, Administrative Law Judge (ALJ) Laura S. Twilley concluded that Plaintiff was not eligible for benefits because he was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review.

Plaintiff subsequently filed this action, and now seeks a remand for benefits, or in the alterative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision.

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. No. 10), the Commissioner's Memorandum in Opposition (Doc. No. 13), and the administrative record (Doc. No. 8).

## II. BACKGROUND

Plaintiff asserts that he has been under a disability since December 21, 2014. On the date last insured, Plaintiff was fifty-one years old. Accordingly, Plaintiff was considered a "person closely approaching advanced age" under Social Security Regulations.[2] *See* 20 C.F.R. § 404.1563(d). He has a limited education.

The evidence of record is sufficiently summarized in the ALJ's decision (Doc. No. 8-2, PageID 48-63), Plaintiff's Statement of Errors (Doc. No. 10), and the Commissioner's Memorandum in Opposition (Doc. No. 13). Rather than repeat these summaries, the Court will focus on the pertinent evidence in the discussion below.

## III. STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470, 106 S. Ct. 2022, 90 L. Ed. 2d 462 (1986); *see* 42 U.S.C. § 423(a)(1). The term "disability"—as defined by the Social Security act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant

---

[2] The non-disability decision incorrectly identifies Plaintiff as a "younger individual."

paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. §423(d)(1)(A); *see Bowen*, 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakely*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance…" *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant

3

of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV. THE ALJ'S DECISION

As noted previously, it fell to the Administrative Law Judge to evaluate the evidence connected to Plaintiff's application for benefits. In doing so, she considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. She reached the following main conclusions:

Step 1: Plaintiff did not engage in substantial gainful activity from December 21, 2014 through his date last insured, September 30, 2017.

Step 2: Plaintiff had the severe impairments of cervical degenerative disc disease, obesity, cervical radiculopathy, and borderline intellectual functioning.

Step 3: He did not have an impairment or combination of impairments that or equaled the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: His residual functional capacity, or the most he could do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consisted of "light work" subject to the following limitations: "No overhead reaching bilaterally. He can only occasionally climb ramps and stairs, stoop, crouch, crawl, kneel, and balance on uneven or narrow surfaces. He can occasionally push and pull with his upper extremity. No work involving any exposure to unprotected heights or dangerous moving machinery. He can understand [*sic*] remember, and carry out simple tasks with simple instructions in a routine work setting. There should not be any reading required to perform the job. No production rate work or strict production quotas."

Step 4: Plaintiff was unable to perform any past relevant work.

Step 5: Plaintiff could perform a significant number of jobs that exist in the national economy.

4

(Doc. No. 8-2, PageID 50-63). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 63.

## V. DISCUSSION

Plaintiff challenges several aspects of the non-disability decision. He initially alleges that error occurred in weighing the medical opinion of treating neurosurgeon, Dr. Lynn Robbins. He further asserts that substantial evidence does not support the assessment of his symptoms, and that error occurred as to the ALJ's reliance on the vocational expert's testimony since the hypothetical did not properly account for his vocational abilities.

### A. Treating Source Opinion

Plaintiff alleges that Dr. Robbins' treating source opinion was not properly assessed for controlling or deferential weight, and that the conclusion that Dr. Robbins' opinion was not consistent with the medical evidence of record was unreasonable.

Social Security Regulations require ALJs to generally extend "greater deference…to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers*, 486 F.3d at 242. The Commissioner must afford controlling weight to a treating physician opinion when it is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) not inconsistent with the other substantial evidence in the record. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)).

If the opinion is not controlling, then the ALJ must consider the regulatory factors, which include "the length, frequency, nature, and extent of the treatment relationship as

5

well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence." *Id.* (citing 20 C.F.R. § 404.1527(c)(2)-(6)). Additionally, in discounting the weight given to a treating physician opinion, the ALJ must provide "good reasons" that are "supported by the evidence in the case record." *Id.* (citing Soc. Sec. Rul. No. 96-2p, 1996 SSR LEXIS 9 at *12, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). This "clear procedural requirement" certifies "that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting Soc. Sec. R. 96-2p, 1996 WL 374188, at *5).

In the present case, Dr. Robbins' opinion was afforded "little weight…because it [was] not supported by or consistent with the record." (Doc. No. 8-2, PageID 58). In so finding, the ALJ articulated that Dr. Robbins' opinion was "not consistent with his own treatment notes," and that his assessment was "not consistent with or supported by [Plaintiff's] ongoing treatment from his primary care provider." *Id.* Likewise, the treating neurosurgeon's opinion was found to be not consistent with Plaintiff's testimony. *Id.*

Notably, the ALJ never specifically acknowledged that Dr. Robbins was in fact a treating source.[3] This was in error. *See Watkins v. Comm'r of Soc. Sec.*, No. 3:18-cv-154, 2019 WL 3406434, at *4 (S.D. Ohio July 29, 2019) (Newman, M.J.). And while the ALJ cited to 20 C.F.R. § 404.1527, which contains the legal criteria under which ALJs must weigh medical sources' opinions, including treating source opinions, the ALJ did not cite

---

[3] In its response, the Commissioner acknowledges Dr. Robbins as a treating source and does not contest this designation. (Doc. No. 13, PageID 870).

6

to these legal criteria in weighing Dr. Robbins' opinions.[4] (Doc. No. 8-2, PageID 54). Likewise, she did not reference the treating physician rule anywhere in the decision, nor determine that Dr. Robbins' opinion was not entitled to controlling weight. This too was in error. Taken together, these omissions make it impossible to determine if the ALJ even identified that Dr. Robbins was a treating source, and considered him as such in evaluating his opinions. *See Watkins*, 2019 WL 3406434, at *4 (quoting *Marks v. Colvin*, 201 F. Supp. 3d 870, 882 (S.D. Ohio 2016) (Newman, M.J.)) ("[S]uch failure is reversible error because it 'deprives the Court of the opportunity to meaningfully review whether [the ALJ] undertook the 'two-step inquiry' required when analyzing treating source opinions.'").

These omissions notwithstanding, the Commissioner maintains that Dr. Robbins' treating source opinion was properly assessed for controlling weight because his opinions were found to be not supported by, or consistent with, the evidence of record. Yet, mere use of these factors seems merely incidental, rather than intentional, for the reasons set forth above. Even assuming *arguendo* that the ALJ recognized Dr. Robbins as a treating source and assessed his opinions for controlling weight, error nevertheless occurred because Dr. Robbins' opinions were not properly evaluated under the regulatory factors.

Indeed, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §§ 404.1527…" Soc. Sec. R. 96-2p, 1996 WL 374188, at *4. Assuming that the controlling weight analysis was applied through determining that Dr. Robbins' opinions were unsupported by and inconsistent with

---

[4] In referencing these criteria, the ALJ cited generally to 20 CFR 404.1527, and then specifically referenced 20 CFR §§ 404.1527(d), 404.1527(e), and 404.1527(f). However, the ALJ failed to specifically mention 20 CFR § 404.1527(c), which arguably contains the most pertinent criteria.

7

the evidence of record, the same, limited evaluation cannot simultaneously satisfy the application of the regulatory factors of consistency and supportability. In other words, there was no independent consideration of these factors apart from the supposed controlling weight analysis. Finding otherwise would disregard the two-step inquiry that must be afforded to treating source opinions. *See Rogers*, 486 F.3d at 242 ("[I]n all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding").

Furthermore, no other regulatory factors were considered. In fact, relevant factors such as the nature and extent of the treatment relationship as well as Dr. Robbins' area of specialty were entirely ignored. *See* 20 C.F.R. § 404.1527(c)(2)-(6). Dr. Robbins was not recognized as a neurosurgeon, and there was no consideration that Plaintiff's primary care physician, Dr. Joni M. Koren, referred Plaintiff to Dr. Robbins for his specialty.[5] (Doc. No. 8-7, PageID 429). As to the nature and extent of Dr. Robbins' treatment, the ALJ did not recognize that Dr. Robbins performed the operative procedure for anterior cervical discectomy and interbody fusion at C6-7 and anterior cervical plating from C6-7. (Doc. No. 8-7, PageID 422). Likewise, the ALJ did not acknowledge that Dr. Robbins handled Plaintiff's surgical treatment plan, post-operative recovery and observed his progress over several months through regularly ordering, and subsequently reviewing, imaging to monitor Plaintiff's progress and recovery. (Doc. No. 8-7, PageID 476, 480, 483, 486, 489).

---

[5] S*ee* 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist.").

Rather than considering these relevant factors, there is great emphasis on the fact that Dr. Robbins' opinions were contained "on a poorly fabricated representative supplied form instead of an approved and readily available SSA form, which would have provided for a more concise and standardized assessment of [Plaintiff's] functioning ability." (Doc. No. 8-2, PageID 58). Dr. Robbins was faulted for not indicating "how frequently he examined the claimant or even if the claimant was examined when he completed the form." *Id.* In light of the evidence of record and the information contained on the form, these issues seem trivial. The record reflects that Dr. Robbins treated Plaintiff for a period of time, and there are treatment notes detailing each encounter. It is also unclear as to why the form, that included Dr. Robbins' observations as to Plaintiff's signs and symptoms in addition to Dr. Robbins' opinions as to Plaintiff's limitations, was "poorly fabricated" as it gave Dr. Robbins' an opportunity to evaluate Plaintiff's specific functional abilities. (Doc. No. 8-7, PageID 693-97). For instance, the form provided Dr. Robbins with the opportunity to opine as to Plaintiff's abilities to sit, stand, walk, shift positions, lift and carry, and complete postural activities, such as twisting, stooping, crouching/squatting, climbing ladders and stairs, reaching, handling, and fingering. It also provided questions as to the need for unscheduled breaks, likelihood to be off-task and Plaintiff's ability to tolerate stress. Declining to afford controlling or deferential weight to Dr. Robbins' opinion because his opinions were contained on "a poorly fabricated form" was in error.

Additionally, while there are some reasons provided for why Dr. Robbins' opinion was afforded "little weight," these reasons are not "'sufficiently specific to make clear,' SSR 96-2p, 1996 WL 374188, at *5, that the ALJ recognized and evaluated the treating

9

relationship" between Plaintiff and Dr. Robbins. *Blakley*, 581 F.3d at 409. Rather, in weighing his opinions, the ALJ only recognized a single treatment note from several months after Plaintiff's initial consultation and surgery. Similarly, although Dr. Robbins' assessment was allegedly "not consistent with or supported by [Plaintiff's] ongoing treatment from his primary care provider," there is limited comparison to this ongoing treatment. Instead of considering her relevant observations, the ALJ primarily focuses on Plaintiff's normal movement, normal motor tone and strength, muscle rigidity and decreased range of motion. (Doc. No. 8-2, PageID 58). Other notes from the relevant period went unmentioned including Dr. Koren's observations of back spasms, pain to palpitation and decreased flexion of the cervical spine. (Doc. No. 8-7, PageID 450, 453, 455, 457). Consequently, the selective analysis does not support a finding that good reasons were provided for affording the Dr. Robbins' opinion "little weight."

As the Sixth Circuit has repeatedly instructed, "[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (internal quotation marks and citation omitted); *see Gayheart*, 710 F.3d at 374; *Rabbers*, 582 F.3d at 651; *Bowen*, 478 F.3d at 746; *Wilson*, 378 F.3d at 546-47. A careful review demonstrates that Dr. Robbins' opinions were not properly considered under the legal criteria mandated by the treating physician rule and the regulatory factors. This was in error. For these reasons, Plaintiff's Statement of Errors is well-taken. In light of the foregoing, the undersigned need not address Plaintiff's remaining assertions.

## VI. REMAND

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99, 111 S. Ct. 2157, 115 L. Ed. 2d 78 (1991). A remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming, and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems

discussed above. On remand, the ALJ should be directed to evaluate the evidence of record under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether his application for Disability Insurance Benefits should be granted.

**IT IS THEREFORE RECOMMENDED THAT**:

1. The ALJ's non-disability decision is **VACATED**;

2. No finding is made as to whether Plaintiff David Cottrell was under a "disability" within the meaning of the Social Security Act;

3. This matter is **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this decision; and

4. The case is terminated on the Court's docket.

April 28, 2021                          *s/Sharon L. Ovington*
                                                           Sharon L. Ovington
                                                           United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).